### GRUBB v. SMILEY, Co. Treas.

No. 19698.    Opinion Filed Dec. 10, 1929.

Rehearing Denied Feb. 25, 1930.

Brown & Stater and Burford, Miley, Hoffman & Burford, for plaintiff in error.

Byron Kirkpatrick, Co. Atty., Hugh Webster, Asst. Co. Atty., Ed. O. Cassidy, H. O. Bland, City Atty., and Harry L. S. Halley, Asst. City Atty., for defendant in error.

ANDREWS, J. This cause involves the last half of the tax for the fiscal year beginning July 1, 1926. The first half thereof was involved in cause No. 19639, 140 Okla. 233, 283 Pac. 784 (this day decided). The parties appear here as they appeared in the trial court, and will be referred to herein as plaintiff and defendant, respectively.

Under date of September 20, 1929, an order of dismissal was entered in this case on stipulation of the parties dismissing the appeal as to certain portions of the tax involved herein. The decision in this case is subject to that order.

It was stipulated and agreed that the decision in this case shall apply with equal force and effect to the companion cases as listed in a stipulation entered into between the parties hereto.

The petition of the plaintiff was divided into eight causes of action. Each of these causes was considered separately in the briefs, and will be so considered in this opinion. In addition thereto, there was a general contention that the petition as a whole did not state a cause of action, for the reason that the tax sought to be recovered was not paid at the time and in the manner provided by law and before delinquency. That identical contention was made in cause No. 19639, supra, between the same parties and it was there held:

22

"Sections 9719 and 9971, C. O. S. 1921, contemplate that county taxing officials will perform their duties in ample time so that a taxpayer may have the benefit of the provisions thereof. There is nothing in said sections to provide that a tax will become delinquent before the tax rolls are certified to the county treasurer. Taxpayers have a constitutional right to a reasonable time in which to pay taxes after payment thereof is possible and before the same becomes delinquent and to recover illegal taxes paid under protest. Where the county taxing officials have failed to certify the tax rolls to the county treasurer at the time and in the manner provided in the statute fixing the date of maturity and delinquency thereof, payment under protest may be made by a taxpayer and a suit maintained by him to recover the alleged illegal tax notwithstanding payment of the tax is made after the date of delinquency provided by the statute"

—which rule is applicable to the facts as shown by the petition in this case, and the same rule is herein announced.

The first cause of action involves a levy for county highway purposes in addition to a 4 mills levy for current expenses. This court in Re Missouri, K. & T. Ry. Co., 136 Okla. 191, 276 Pac. 769, on an appeal from the Court of Tax Review, held:

"Section 2, art. 3, ch. 173, S. L. of Oklahoma 1915, as amended by section 5, ch. 30, S. L. 1916, p. 76, and brought forward as section 10202, C. O. S. 1921, as supplemented and amended by implication by chapter 48, S. L., Sp. Sess. 1923-24, authorizes the county excise boards of the various counties in the state to levy an additional tax for the county highway fund, which excess, together with the maximum amount allowed counties for current expenses, under section 9692, C. O. S. 1921, may not exceed 8 mills"

—which, under the facts shown in this case, is the proper rule of law, and the same is applied to the facts in this case. See, also, Turner v. Cox, No. 18588; opinion filed June 11, 1929, 138 Okla. 225, 280 Pac. 568.

The contention in this case of the unconstitutionality of chapter 48, Id., was determined, in the above-cited cases, adversely to the contention of the plaintiff herein.

It is further contended by the plaintiff that the highway levy attacked in this case is void for failure of the taxing officials to comply with the statutory requirements relative to the itemization of the estimate and of the appropriation; that the county officials are required to itemize the appropriation for county highway purposes in accordance with certain statutory requirements; that they failed to follow these requirements and merely levied a lump or bracketed sum, without attempting to state or show in the estimate of needs or in the appropriation as made for what purpose or purposes, or upon what projects, this highway money was to be spent. This contention was not determined in either of the above cited cases. The defendant concedes that the argument of the plaintiff on this contention may be sound as to the road and bridge fund of the county, but not as to the county highway fund.

The petition alleged, and the financial statement and estimate which were offered in evidence show, an estimate for "roads and bridges" of $651,557.45 without an itemization of the appropriation or a statement of the purposes for which this money was to be used. A bracket was drawn opposite the portion of the blank showing the various needs, and a single appropriation was made for all those needs. There was nothing about it to indicate what, if any, portion was to be spent upon any particular road or bridge or in any part of the county, and under the form used the amount appropriated may be spent without regard to any particular need. It will be noted that the estimates for other purposes are itemized. For instance, the estimate for the county attorney is divided into salaries, traveling expenses, office supplies, postage, furniture and sundries, and the estimate for the other departments are itemized.

Section 9697, C. O. S. 1921, specifies the duties of the officers, boards, or commissions with reference to financial reports to the excise board. That section provides:

"* * * That the report relative to the construction and repair of bridges shall be made by the county commissioners and county surveyors, conjointly, and shall be itemized so as to show the location of each proposed new bridge and the estimated cost thereof. * * *"

Section 9698, C. O. S. 1921, provides for meetings of the excise board, the procedure thereof, and for the making of appropriations. It provides:

"The appropriation * * * for the county shall be itemized so as to show the amount of funds appropriated for the several offices, boards and commissions, and shall be detailed in separate items as to each thereof, as follows: * * * For construction of new bridges, so itemized as to show the location of each proposed bridge and the amount appropriated therefor, separately stated; for maintenance and repairs on

bridges; for construction and maintenance of state roads (appropriation in lieu of one-fourth or other mill levy for county road construction fund); for opening and changing roads, and costs incident to condemnation proceedings to obtain right of way for roads; for machinery, tools and equipment for road work; for equipment for working convicts on road work and compensation of guards therefor. * * *"

There is no other provision in our statutes as to the method to be used in making appropriations.

The plaintiff contends that this statute was violated, and that by reason thereof the appropriation attempted to be made is illegal and void. In support thereof plaintiff cites Nelson, Sheriff, v. Oklahoma City & Western Ry. Co., 24 Okla. 617, 104 Pac. 42, wherein it was said:

" 'Where the statute requires a series of acts to be performed before the owners of the property are properly chargeable with the tax, such acts are conditions precedent to the exercise of the power to levy tax, and all the requirements of the statute must be complied with, or that tax cannot be collected,' (Hewes v. Reis et al., 40 Cal. 255.)" —and relies upon the cardinal principle that taxes can be levied only in the manner and by the method provided by law as asserted in Oklahoma News v. Ryan, 101 Okla. 151, 224 Pac. 969; City of Sapulpa v. Land, 101 Okla. 22, 223 Pac. 640; Ryan v. Roach Drug Co., 113 Okla. 130, 239 Pac. 912; and Ryan v. Cooke Building & Investment Co., 113 Okla. 78, 239 Pac. 919.

Plaintiff contends that section 19 of art. 10 of the Constitution, which reads as follows:

"Every act enacted by the Legislature, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose" —and which was held by this court in Meyer et al. v. Lynde-Bowman-Darby Co. et al., 35 Okla. 480, 130 Pac. 548, to be a restriction upon the power of the Legislature, and not only prohibits the Legislature from enacting such a law, but establishes a policy of this state and prohibits an excise board from levying a tax without specifying distinctly the purpose for which the tax was levied. He contends that the action of the excise board in this instance is not only in conflict with the requirements of section 9698, Id., but with section 19 of art. 10 of the Constitution. This is answered by the defendant with a statement that sections 9697 and 9698, Id., apply to appropriations for roads and bridges in the general fund and not to the county highway fund which is in addition to the general fund. We are unable to follow this reasoning. If the appropriation for the county highway fund is not made under section 9698, Id., then it is not made under any provision of our statute. There is no other procedure provided for making levies. There is nothing in section 9698, Id., that in terms or by implication limits its provisions to any particular fund. That section merely provides for specific appropriations for the various purposes for which the money is to be used. We see no reason why the Legislature would require a specific appropriation for postage, telephone, and telegraph for each officer, or for rent for each officer, and then permit a general appropriation for the entire road work. We can see no reason why the excise board should itemize its various appropriations, as was done in this case, to show:

| 1-A County Attorney | |
|---|---|
| For salary of County Attorney and all regular deputies and employes | $24,940.00 |
| For traveling expenses — as authorized for by law | 500.00 |
| For office supplies, blank books, stationery and printing | 1,500.00 |
| For postage, telephone and telegraph | 500.00 |
| For furniture and office equipment | 500.00 |
| For sundry other expenses | 1,250.00 |

—and then make an appropriation for roads and bridges, as follows:

| 1X-W Roads and Bridges | |
|---|---|
| For construction of roads: | |
| a. Section | |
| b. Section | |
| c. Section | |
| d. Section | |
| e. Section | |
| f. Section | |
| g. Section | |
| h. Section | |
| For construction of bridges: | For County and State Highway purposes as provided by Chapter 48 Session Laws of 1923-24 __$651,557.45 |
| a. Bridge No. | |
| b. Bridge No. | |
| c. Bridge No. | |
| d. Bridge No. | |
| e. Bridge No. | |
| f. Bridge No. | |
| g. Bridge No. | |
| h. Bridge No. | |
| For tools, machinery and equipment a. | |
| For Per Diem and Expenses County Engineer. | |
| For Maintenance of Roads and Bridges. | |
| For Publishing Notices. | |

Evidently the State Examiner construed this law as we construe it, or he would not have prepared the form in the manner in which it was prepared.

In our opinion, the appropriation made for roads and bridges in the sum of $651,557.45, as shown by the allegations of the petition, is not in conformity to the requirements of the statute; the same is for that

reason illegal and void. The trial court committed reversible error in sustaining the demurrer of the defendant to the first cause of action in the plaintiff's amended petition.

The second cause of action involves the contention of the plaintiff that .06 mill of the county general fund is illegal and void in that the balance sheet statement shows a liability in the sinking fund, "Due to other funds $9,627.70," which liability is not reflected in any credit, and that if the liability in the sinking fund is credited to the general fund, the amount of money necessary to be raised by taxation would be $9,627.70 less than the amount for which the levy was made. It is clear that the inclusion in the sinking fund estimate of this amount as a liability reduced the amount of the sinking fund and required an additional appropriation for the sinking fund. It is equally clear that if there is a liability in the sinking fund of this amount, there must be a credit in some fund or funds of an equal amount, and that the deduction of that amount from the estimated needs will reduce the tax levy to that extent. It is equally clear that a tax levy in excess of an amount necessary to produce the funds that are required is illegal and void. St. Louis-S. F. Ry. Co. v. Hayworth, 48 Okla. 132, 149 Pac. 1086; St. Louis-S. F. Ry Co. v. Thompson, 35 Okla. 138, 128 Pac. 685; St. Louis-S. F. Ry. Co. v. Amend, 44 Okla. 602, 145 Pac. 1117; St. Louis-S. F. Ry. Co. v. Tate, 35 Okla. 563, 130 Pac. 941; St. Louis-S. F. Ry. Co. v. Lindsey, 42 Okla. 198, 140 Pac. 1153, and Ryan v. Bass Furniture Co., 113 Okla. 86, 241 Pac. 786.

The defendant contends that the liability shown in the sinking fund is due to the common school sinking fund, and not to the general fund of the county, as contended by the plaintiff. There is no attack on the common school sinking fund.

An examination of the evidence shows that it sustains the statement of the trial court that, "I am not in a position to say, gentlemen, where that $9,627.70 is due." The burden was on the plaintiff to sustain his allegations by proof. There was no competent evidence as to where this credit should be applied, and the action of the trial court in sustaining a demurrer to the evidence of plaintiff offered on the second cause of action is sustained.

The third cause of action involves the validity of a levy for separate school purposes. The original scholastic enumeration was introduced in evidence and disclosed that the separate or colored school enumeration of the county comprised 10 per cent. of the total scholastic enumeration of the county. The plaintiff contends that 10 per cent. of the total estimated income from miscellaneous sources should be set aside and apportioned to the separate school fund of the county, and that this would have exceeded the appropriation for that fund, whereby no levy for separate schools would have been necessary. The trial court found that the levy of 1.66 mills was excessive to the extent of .12 mills. From this judgment both plaintiff and defendant appealed.

It is clear, under the rule announced in the cases hereinbefore cited, that if the separate school fund had an income from other sources sufficient to meet its estimated needs, then the levy was void.

The legal question involved is whether or not the separate school fund is entitled to its pro rata share of the total from miscellaneous sources for scholastic purposes in proportion to the scholastic enumeration of the separate school children to that of the enumeration of the other enumerated children.

Plaintiff contends that under section 10315, C. O. S. 1921, the county superintendent of public instruction is charged with the duty of apportioning this fund among the school districts according to the scholastic enumeration of each district, as held by this court in Board of County Commissioners of Carter Co. v. School Dist. No. 19, 119 Okla. 20, 248 Pac. 324, and School Dist. No. 68 v. Board of County Commissioners, 122 Okla. 116, 251 Pac. 1118, and that the proportionate part thereof based on the separate school scholastic enumeration should be paid to the county for the use and support of the separate schools, as held in Board of Education v. Board of County Commissioners, 127 Okla. 132, 260 Pac. 22.

It appears from the evidence that the excise board made an appropriation for the separate schools, as follows:

| | |
|---|---|
| In Common School Districts | $ 19,545.00 |
| Independent District No. 19 | 25,250.00 |
| Independent District No. 22 | 204,337.00 |
| Independent District No. 27 | 3,610.00 |
| Independent District No. 28 | 2,050.00 |
| Total appropriated | $254,792.00 |
| to which was added ten per cent. in the sum of | $ 25,479.20 |
| making a total requirement of | 208,271.20 |
| and that there was deducted therefrom a surplus of | $ 5,383.68 |
| and estimated income of | 17,260.88 |
| making a total requirement of | 208,271.20 |
| leaving to be raised by taxation | 257,626.84 |

—for which a total levy of 1.66 mills was made and which was reduced by the trial court .12 mills.

It further appears from the evidence that the estimated income to the county from other sources for scholastic purposes was $196,811.29, which sum did not exceed the actual income for such purposes during the previous fiscal year.

The school population of the county consists of all persons of school age, whether of the white or negro race. Board of County Commissioners v. School Dist. No. 19, supra.

Under section 9822, C. O. S. 1921, it is the duty of the county treasurer to apportion the gross production tax fund received by him and credit one-half thereof to the common school fund of the county in proportion to the school population of the county, which, as was said in Pickett, Co. Treasurer, v. Smith et al., 75 Okla. 155, 182 Pac. 680, contemplates a ratable distribution thereof by the county treasurer throughout the several school districts and parts of districts of the county, or, as was said in Board of County Commissioners v. School Dist. No. 19, supra, a credit is but showing the amount that each one of school age is entitled to by an equal division of such fund.

Under section 10315, Id., the county superintendent is required to apportion the state school fund apportioned to the county together with the unappropriated county school fund in the county treasury among the school districts and parts of districts in his county in the ratio of the number of persons of school age who are entitled to receive the same residing in each district or parts of districts, with certain exceptions not necessary to be considered.

The county treasurer is required to turn over to the treasurer of the respective independent school districts the full amount appropriated to each independent school district.

This entire matter was discussed at length in Board of Education v. Board of County Commissioners, supra. However, the particular point involved herein was not there considered or determined.

The fund for the conduct of the separate school work in both common school districts and independent districts is raised by a levy on the property in the entire county and by income from other sources.

It is our opinion, and we hold, that before making the apportionment of funds for school purposes, the county treasurer, with the aid of the county superintendent, should ascertain the scholastic enumeration for each school district in the county, and that he should estimate the proportion thereof in each district that belongs to the separate school class. He should then apportion the total fund to each district according to the total enumeration in each district. He should then credit each school district with the proportionate part of the amount apportioned to that district that the common school enumeration bears to the separate school enumeration, and he should credit to the county school fund for separate school purposes the proportionate part of the amount apportioned to each district that the separate school enumeration bears to the common school enumeration in that district. The result of this will be to give each school district the correct portion of school aid according to the enumeration, and it will give to the county school fund for separate school purposes the correct portion of school aid according to the enumeration. When these funds become available, he should pay to the treasurer of each independent school district the amount credited to that district for common school purposes for the use and benefit of the common schools of that district, and the amount credited to that district for separate school purposes for the use and benefit of the separate schools of that district. He should deposit to the credit of each common school district the amount credited to that district for common school purposes for the use and benefit of the common schools of that district, and he should deposit to the credit of the county separate school fund the amount credited to that district for separate school purposes for the use and benefit of the separate schools in common school districts of the county.

In making up the financial statement for the county school fund there should be considered, not only the cost of maintenance of the separate schools in common school districts, but of the separate schools in independent districts, and the amount apportioned to the separate schools by the county treasurer for both common and independent districts should be considered by the excise board in determining the amount necessary to be raised by ad valorem taxation for the separate school needs, not only of the common school districts, but of the independent school districts.

The plaintiff contends that 10 per cent. of the estimated income from miscellaneous sources should have been set aside and apportioned to the separate school fund, making the sum of $19,681.12, which should have been apportioned to that fund; that the total appropriation for the separate

26

schools was only $19,545, and no ad valorem tax for separate school purposes was needed. The plaintiff is in error. The total appropriation for separate schools was $254,-892. The defendant contends that the amount actually collected as income from other sources for the previous fiscal year was $16,362.68, which was the maximum amount that could be considered as deductible. The defendant is in error in this respect. The record shows that the income from other sources for the preceding year was sufficient to authorize the deduction of an amount equal to 10 per cent. of the estimated income from other sources. The defendant contends that:

"It was not the duty of the excise board to go into the problematical proposition of scholastic enumeration or the pro rata share to which the separate schools were entitled."

It was the duty of the excise board to deduct the income from other sources in order to determine the amount necessary to be raised by ad valorem taxation, and it was the duty of the excise board to include in this deduction all of the funds due the separate schools from school aid. Defendant says:

"The records of the county superintendent on scholastic enumeration were not before the excise board."

It was the duty of the excise board to procure such official records as were necessary to ascertain the facts necessary to a proper computation of the tax levy needed.

The deduction from the appropriation of the proper amount of income from other sources would have reduced the tax levy made to the amount of .12 mills. The trial court so found, and ordered a reduction in that amount. The judgment of the trial court in ordering that reduction is affirmed.

The fourth cause of action goes to the illegality of a levy of 1 mill for park purposes in the city of Tulsa in excess of the 6 mills levy authorized for cities.

The levies for the benefit of the city of Tulsa for the fiscal year in question were as follows:

| | |
|---|---|
| Current expenses | 6.00 mills |
| Park | 1.00 mills |
| Street resurfacing and repair | .50 mills |
| Library | .50 mills |
| Cemetery | .075 mills |
| Total | 8.075 mills |

The city levy for current expenses is limited by section 9692, C. O. S. 1921, to not more than 6 mills, unless an additional levy is authorized at an election held as provided under sections 9707-9712, inclusive, C.

O. S. 1921, and this limitation applies in all cities, whether governed by charter or otherwise. Oklahoma News Co. v. Ryan, Co. Treasurer, 101 Okla. 151, 224 Pac. 969. A levy for park purposes must be considered within the limitation allowed the city for current expenses. Acme Milling Co. v. Bonaparte, Co. Treasurer, 125 Okla. 15, 257 Pac. 284.

The defendant contends that the levy made was valid for the reason that it was authorized by an election held pursuant to chapter 61, S. L. 1923-24. The trial court found that the election was so held, and that section 9707, Id., did not apply.

The evidence shows that at that election there were 880 votes for the proposition and 335 against the proposition. This does not conform to the requirements of section 9709, Id., and if that section is controlling, then the election was invalid.

This leaves for consideration, chapter 61, S. L. 1923-24. This court, in Oklahoma News Co. v. Ryan. supra, said:

"The general laws of the state limit the levy for current expenses for cities to six mills, but with authority to make an additional levy, provided an election is held therefor. This general law can be superseded only by a general law enacted by the Legislature and cannot be superseded by the provisions of a city charter. Sections 9707 to 9712, inclusive, which authorize an additional levy where authorized by an election for that purpose, do not simply provide a procedure for making a levy, but confer authority upon the various municipalities to make the increased levies, and such additional levies can be made only by complying with these sections of the statute."

That opinion was filed March 4, 1924. The Legislature was in session at that time and passed Senate Bill No. 89, which is the act in question. The defendant, in his brief, says:

"In fact the holding in this case was the occasion for the passage of this act."

It did not provide for the repeal of conflicting acts. It appears to be, as was said by defendant, " * * * cumulative, and gives to cities of the first class an additional method of authorizing an excess levy for current expenses." It is, in our opinion, a general act and applies to all cases provided therein. The title to the act shows that provision. It reads:

"An act providing for the correction of tax rolls in certain cases. * * *"

These cases are defined in section 1 thereof, which reads as follows:

"Section 1. In any county in this state, where a court of competent jurisdiction has held that section 9692, Compiled Oklahoma Statutes 1921, has been violated by attempting to levy for general city purposes for the fiscal year 1923-24, a tax in excess of 6 mills upon each dollar of taxable property subject to ad valorem tax in such city for the said year 1923-24, such tax having been spread of record upon the tax rolls of such county, it is hereby made the duty of the county assessor and the county treasurer of such county to immediately cancel said excess to the extent that such attempted levy exceeds 6 mills for general city purposes, and to correct and reform the tax rolls of such county to conform thereto:

"Provided, that where any taxpayer has, prior to the taking effect of this act, paid the 1923-24 taxes for general city purposes in excess of 6 mills, such excess shall be refunded by the county treasurer to the taxpayer paying the same out of any fund then in, or thereafter coming into, his hands belonging to said city for such fiscal year, and making the proper accounting and adjustment for the same, and shall thereon take from said taxpayer an original and carbon copy of receipt therefor, and shall deliver and file with the city treasurer of said city, such original receipt and shall retain said carbon copy thereof; provided, further, that any taxpayer entitled to such refund shall make demand for the same within six months from the date of the passage and approval of this act."

The evidence in this case shows that that act does not apply to the facts in this case. The conditions required by section 1 to make the act operative were wholly lacking.

This court is unable to say that the people of Tulsa county would have authorized the additional levy complained of if it had been submitted to them in a legal way, but this court does say that that levy was never submitted to them in a legal way.

The construction of this act contended for by the plaintiff is said by defendant to be "absurd." We think it more absurd to hold that an act, by its terms made operative only on certain conditions, shall be operative without regard to those conditions, and we decline to so hold.

This court in Ryan v. Roach Drug Co., 113 Okla. 130, 239 Pac. 912, said:

"The general law of this state granting to cities the power to levy tax is found in sections 9692, 9699, 9701-9712, Comp. St. 1921. * * *"

The adoption of chapter 61, S. L. 1923-24, provided additional authority under certain circumstances not here shown to exist.

The plaintiff made other contentions with reference to this levy, but it is unnecessary to consider them after arriving at the conclusion we have reached.

The levy for park purposes was in excess of the 6 mills authorized for current expenses, and the trial court was in error in rendering judgment in favor of the defendant.

The fifth cause of action involves a levy of .5 mill for street resurfacing purposes in the city of Tulsa in excess of the 6 mills levy for current expenses.

This court determined, in Acme Milling Co. v. Bonaparte, Co. Treasurer, supra, that a levy for street repair cannot be in excess of that authorized for current expenses.

Defendant makes the contention that this additional levy was authorized at the election which was considered by this court in determining the fourth cause of action herein. What we had to say then is applicable hereto, and we therefore hold that the levy for street improvement purposes was in excess of the 6 mill levy authorized for current expenses and is void.

The trial court was in error in rendering judgment in favor of defendant.

The sixth cause of action involves the general fund levy to the extent of 3.15 mills.

The plaintiff contends that the library levy of .5 mill and the cemetery levy of .075 mill were in excess of the authorized levy for the current expenses and void.

This court in M., K. & T. Ry. Co. v. Bennett, 122 Okla. 102, 250 Pac. 1021, in the first and second paragraphs of the syllabus, said:

"Under section 9528, C. O. S. 1921, a tax may be levied by the excise board to create what is referred to in said statute as a library fund, but such tax, when levied, is a current expense within the meaning of section 9692, C. O. S. 1921, and the levy so made, with other levies, for other current expense purposes authorized by law, cannot exceed the 6-mill limitation provided by said section.

"Under section 4329, C. O. S. 1921, the excise board of any county may levy under the conditions of said statute a tax for cemetery purposes, but such tax is for a current expense, within the meaning of section 9692, C. O. S. 1921, and the amount thereof, together with the levies for other purposes authorized by law as current expenses, cannot exceed the limitation of six mills by said section provided"

—and this holding was followed in Acme

Milling Co. v. Bonaparte, Co. Treasurer, supra, and Murray v. Ryan, 125 Okla. 17, 257 Pac. 285.

The only defense to this contention made by the defendant is that these excess levies were authorized at the election which was considered by this court in determining the fourth cause of action herein. What we had to say then is applicable hereto, and we therefore hold that the levy for library purposes and the levy for cemetery purposes were in excess of the 6 mills levy authorized for current expenses and are void.

The holding of this court in Re Protest of Chicago, R. I. & P. Railway Co., No. 20263, opinion filed June 25, 1929, 137 Okla. 186, 279 Pac. 319, is not in conflict herewith, and that decision construes the act adopted by the legislative session of 1927 after the levy in question here. In that case the court said:

"The case of Missouri, K. & T. Ry. Co. v. Bennett, County Treasurer, supra, was decided by this court October 12, 1926, and petition for rehearing denied December 14. 1926, hence, it is evident the act under consideration was enacted by the Legislature in 1927, to overcome the objections leveled at the law and sustained by the court, so as to make it definite and certain that the levy for a library fund was in addition to the general current expense levy."

The second contention is that the excise board failed to consider taxes in process of collection for the second preceding year. Evidence tending to show this was excluded by the trial court. This contention is settled by applying the rule announced in Albrecht v. Jones, 130 Okla. 277, 267 Pac. 270. There was no error in excluding that evidence.

The trial court erred in rendering judgment in favor of the defendant. Judgment should have been rendered in favor of the plaintiff on this cause of action.

The seventh cause of action involves the same contention as the second one made in the sixth cause of action, and the rule therein announced is decisive.

There was no error in rendering judgment for the defendant on the seventh cause of action.

The eighth cause of action involves the waterworks levy for the city of Tulsa sinking fund, of which 7.38 mills is protested. A demurrer was sustained to the allegations of the amended petition, and the appeal is from the order sustaining the demurrer.

The allegations of the amended petition on this cause of action pertinent to this discussion were:

" * * * The estimated receipts from water rates, based upon the actual receipts as subsequently ascertained, for the fiscal year 1926-27 were $——— and that the actual operating expense of the water department based upon actual expense as subsequently ascertained for said fiscal year were $———, leaving a balance of $——— which should have been used to apply on the sinking fund requirement for waterwork bonds and thereby reducing the ad valorem tax levy for said year," and

"Plaintiff further alleges that if the surplus left on hand after the deduction of the ordinary operating expenses of the waterworks department had been deducted from the estimated receipts of said department, as required by law, there should have been sufficient revenue on hand to satisfy the interest and 3 per cent. of the principal of said bonds, and that said sum should have been used in this manner according to law. Plaintiff further alleges that the total assessed valuation of the property in said taxing jurisdiction for said fiscal year was $109,-369,586, and that the aforesaid sum of $807,-317.50 had not been included in the sinking fund requirement, the levy for the sinking fund for the said taxing jurisdiction for said fiscal year would have been reduced to the extent of 7.38 mills, and that, therefore, said levy is illegal, excessive and void and made for a purpose unauthorized by law, to the extent of 7.38 mills."

In the case of Perrine v. Bonaparte, Co. Treasurer, 140 Okla. 165, 282 Pac. 332, this court held that neither the statute nor the Constitution specifically stated the purpose to which the profits derived from municipally owned utilities need be appropriated.

Plaintiff contends that that case is not an authority here for the reason that:

"In the Oklahoma City case, being the Perrine Case, the city authorities in their financial statement, accounted for and admitted receiving the net profits from water works in the general fund. In the case at bar, the city of Tulsa does not account for nor admit receiving the net profits in the general fund, or sinking fund either. Certainly, it is most elementary that this money is income from sources other than ad valorem taxation, and under section 9699 and any conceivable construction of section 4507, and regardless of the opinions to be rendered in the waterworks cases now pending, including the Perrine Case, the plaintiff is entitled to judgment to the extent of the net profits from the waterworks of the city of Tulsa."

And we note the distinction made. However. under the state of the record under

consideration, this being an appeal from an order sustaining a demurrer to the amended petition, we cannot determine what the effect is on a levy where there is a profit which is not credited to any fund. We must confine our decision to the facts pleaded.

The amended petition states the conclusion of the plaintiff as to the application of the law to the facts, but those conclusions are not admitted by the demurrer.

"A demurrer containing appropriate specific grounds does not admit asserted conclusions that are not sustained by proper allegations, or that are contrary to law. (See Louisville & Nashville Ry. Co. v. Palmes, 109 U. S. 244, 3 Sup. Ct. 193, 27 L. Ed. 922; Stand. Ency. Proc. 951, et seq."

The amended petition does not show a profit from the operation of the water plant, but states that there will be profit. Even though that is true, it is not a sufficient allegation of fact, for, by section 9699, C. O. S. 1921, there cannot be deducted for estimated income an amount in excess of the actual income from that source for the previous fiscal year. There was no allegation of the amount of the income from that source for the previous fiscal year.

There was no allegation of a balance on hand from previous fiscal years.

There was no allegation that the balance on hand or income from other sources was not credited to current expenses or the general fund.

The allegations were confined to conditions that would exist at the end of the fiscal year in question rather than to conditions existing at the beginning of that fiscal year. Had the paragraph of the amended petition first herein quoted read "1925-26" in the place where it reads "1926-27," there would be more merit in plaintiff's contention.

Had the amended petition been drawn after the preparation of the briefs in this case, it would doubtless have stated a cause of action as argued in the briefs, but, as it was written, it did not state a cause of action under the rule announced in the Perrine Case, supra.

In view of the fact that the defendant has argued in the brief that:

"Income from a waterworks system owned exclusively by municipalities is not income necessary to be taken into consideration in making a legal levy"

—we think it advisable to state that we do not agree with that contention and that it is not supported by the authorities cited. Such income, like income from other sources, must be considered in determining the amount of money to be raised by ad valorem taxation. Whether such income should be credited to the sinking fund or to some other fund, in making the levies, is not here determined.

There was no error in sustaining the demurrer to the amended petition.

The cause is remanded to the district court of Tulsa county to take such action as is necessary in conformity to the decision of this court on the several causes of action.

MASON, C. J., LESTER, V. C. J., and HUNT, CLARK, RILEY, CULLISON, and SWINDALL, JJ., concur. HEFNER, J., absent.